Filed 10/15/13  P. v. Passineau CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rulesf Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038397 |
| | (Monterey County |
| Plaintiff and Respondent, | Super. Ct. No. SS052209) |
| v. | ORDER MODIFYING OPINION |
| | AND DENYING REHEARING |
| BRETT ANTHONY PASSINEAU, | [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on September 16, 2013, be modified as follows:

1.  On page 5, the first full paragraph should be modified to read:

"On September 28, 2010, the custodian of records for the Board filed a document entitled "CERTIFICATION OF RECORDS FOR RESTITUTION HEARING."  The certification stated that a "compilation of the bills" was attached, but no actual bills were attached.  The certification included the custodian of records' declaration under penalty of perjury, which stated:  "the records are accurate reproductions of bills that were submitted to and paid by the Board in the amounts indicated, by or on behalf of the above victims."  The certification reflected the total amount of $21,982 was paid for mental health services as follows:"

2.  On page 7, the first full sentence should be modified to read:

"The documents consisted of the actual bills referenced in the certification; specifically, the bills were health insurance claim forms listing the dates of service and the amount charged per service."

3.  On page 9, the second full paragraph, first sentence, immediately after "directly related to defendant's crime" add the following:

"and that the presumption did not apply when the actual bills were not disclosed."

4.  On page 10, the first full paragraph, fifth and sixth sentences starting with "Moreover," the sentences should be modified to read:

"Moreover, the trial court conducted an in camera review of the health insurance claim forms detailing the dates of service and total amount charged per service. Although these bills were not disclosed, they merely corroborated the accounting of the certified records."

5.  On page 14, the second full paragraph, first sentence, after "statutory legal presumption," add:

"and the initial documentation provided by the Board."


There is no change in the judgment.

Real Party in Interest's petition for rehearing is denied.


_____
BAMATTRE-MANOUKIAN, J.


_____
ELIA, ACTING P.J.


_____
MÁRQUEZ, J.

2

Filed 9/16/13 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038397 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS052209) |
| v. | |
| BRETT ANTHONY PASSINEAU, | |
| Defendant and Appellant. | |

**INTRODUCTION**

A jury convicted defendant Brett Anthony Passineau of three counts of lewd conduct with a minor under the age of 14. (Pen. Code, § 288, subd. (a).[1] With respect to two counts, the jury found true a "multiple victim" special allegation. (§ 667.61, former subd. (e)(5), see Stats. 1998, ch. 936, § 9.) Defendant was sentenced to 36 years to life in state prison. Following sentencing, the trial court held a restitution hearing. Defendant was ordered to pay a total of $21,982 in restitution for four victims.

On appeal, defendant contends that the trial court abused its discretion in setting the restitution at the amount determined by the California Victim Compensation and Government Claims Board (Board). Specifically, he argues that the court: (1) misapplied the statutory presumption under section 1202.4, subdivision (f)(4)(A);

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

(2) failed to find defendant rebutted the presumption; (3) failed to disclose the Board's records to defendant; (4) deprived defendant of due process by basing its decision on ex parte evidence; (5) violated the separation of powers doctrine; and (6) abused its discretion by failing to weigh and consider alternative causes of the victims' therapy. We will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Victims K.P. and D.P. are brothers who were born to the same mother and different fathers in July 1998 and June 2000. They were removed from their birth mother and placed with their aunt in May 2002. The aunt had difficulty caring for the brothers as she is a double amputee with a legal prescription for marijuana to ease her pain and her glaucoma. She also had two teenage boys living at her home. She decided that the best option for the brothers was for them to be placed in a two-parent home.

In May 2003, defendant and his wife adopted the brothers. The couple had already been caring for a seven-year old female relative and had adopted a newborn girl in 2002. They met the brothers two times at the aunt's residence in Santa Rosa before taking them home. The aunt remained in contact with the brothers after their adoption. She occasionally visited them at the Passineaus' home and drove them to her house for visits.

Prior to their adoption, it was disclosed to the aunt and the Passineaus that both brothers had a history of sexual molestation by various other individuals.[3] These prior molests involved acts of sodomy and oral copulation. The brothers had already been in counseling for these incidents when they were initially placed with the aunt.

---

[2] The factual background is based on our opinion in defendant's previous appeal from the judgment. (*People v. Passineau* (Oct. 1, 2012, H036276) [nonpub. opn.].) We granted defendant's request to take judicial notice of the opinion.
[3] The identity of the other individuals who had molested the brothers was not revealed at trial.

2

In July 2005, the aunt brought the brothers to her home for a visit. The younger brother told the aunt about a recent camping trip he had taken with defendant. When she asked what types of games they played, he responded "tickle the penis" and "hide the penis in the butt." He also told her "yellow slime" would shoot out after he tickled for a while. The aunt also spoke to the older brother who also recounted that he and defendant would engage in acts such as tickling each other's backs, hugging without clothes on, and playing "the tickle game." The boys were subsequently removed from defendant's home on July 5, 2005.

The brothers were interviewed about the sexual encounters that occurred on their last camping trip. Both brothers described to the interviewer the types of sexual acts defendant had made them perform on him. Through the course of the investigation and trial, the brothers revealed that defendant had engaged in sexual acts with them on numerous occasions on their camping trips.

A jury convicted defendant of three counts of lewd acts with a minor under the age of 14. (§ 288, subd. (a).) In addition, special allegations that the acts were committed on multiple victims were found true as to two counts. (§ 667.61.) The trial court sentenced defendant to state prison for 36 years to life. We affirmed the conviction on appeal. (*People v. Passineau* (Oct. 1, 2012, H036276) [nonpub. opn.].)

After a restitution hearing, defendant was ordered to pay a total of $21,982 to the Board to reimburse payments it made for therapy services provided to four victims: the brothers (D.P. and K.P), the aunt (V.C.), and the adopted step-sister (C.P.).

## STATUTORY BACKGROUND

Section 1202.4, subdivision (a)(1) states: "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." Thus, "in every case in which a victim has suffered economic loss as a result of the defendant's

3

conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).)

The amount of restitution should be "sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including . . . ¶ . . . ¶. Mental health counseling expenses." (§ 1202.4, subd. (f)(3)(C).) The court must order "full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record." (§ 1202.4, subd. (f).) Therefore, "[r]estitution to the victim is mandatory, although the court retains discretion as to the amount. [Citation.]" (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1382.)

Relevant to this case, section 1202.4, subdivision (f)(4) provides special provisions that apply when state funds are used to provide assistance to a victim. "If, as a result of the defendant's conduct, the Restitution Fund has provided assistance to or on behalf of a victim or derivative victim . . . , the amount of assistance provided shall be *presumed* to be a direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered." (§ 1202.4, subd. (f)(4)(A), italics added.) "The amount of assistance provided by the Restitution Fund shall be established by copies of bills submitted to the California Victim Compensation and Government Claims Board reflecting the amount paid by the board and whether the services for which payment was made were for . . . mental health counseling . . . . Certified copies of these bills provided by the board and redacted to protect the privacy and safety of the victim or any legal privilege, together with a statement made under penalty of perjury by the custodian of records that those bills were submitted to and were paid by the board, shall be sufficient to meet this requirement." (§ 1202.4, subd. (f)(4)(B).) "If the defendant offers evidence to rebut the presumption . . . , the court may release additional information contained in

4

the records of the board to the defendant only after reviewing that information in camera and finding that the information is *necessary* for the defendant to dispute the amount of the restitution order." (§ 1202.4, subd. (f)(4)(C), italics added.)

## RESTITUTION HEARING

On September 28, 2010, the custodian of records for the Board filed a certification of records with the trial court. Attached to the certification was a compilation of the bills that related to the four victims. The certification included the custodian of records' declaration under penalty of perjury, which stated: "the records are accurate reproductions of bills that were submitted to and paid by the Board in the amounts indicated, by or on behalf of the above victims." The compilation of bills reflected the total amount of $21,982 was paid for mental health services as follows:

| K.P. | Dates of Service: 11/2/05-11/3/08 | $8,410.00 |
| D.P. | Dates of Service:11/02/05-5/12/09 | $10,120.00 |
| V.C. | Dates of Service:1/12/06-2/5/09 | $2,640.00 |
| C.P. | Dates of Service: 3/24/06-7/28/06 | $812.00 |

The certification also explained in a footnote: "The treating therapists provided certification to the Program that the treatment rendered to the above victims is necessary as a direct result of the crime and 100% related to the crime committed by the above defendant."

On February 2, 2011, defendant filed a motion in opposition to an order of restitution. The prosecutor subsequently filed a memorandum of points and authorities in support of his request that the trial court order restitution in the amount of $21,982, payable to the Board. Defendant then filed supplemental points and authorities arguing there was no initial showing of causation for the reimbursement amount.

The restitution hearing was held on March 3, 2011. At the hearing, defendant argued there was no showing that his crime was a direct cause of the claimed therapy for

5

the four victims. Defendant argued that the nature of the therapy sessions was unknown, and that all four victims had preexisting conditions that could have been the cause of the therapy. As to the direct victims, defendant suggested the therapy sessions could have been related to the brothers' prior sexual molestation, physical problems, bipolar issues, or other issues. He suggested that the aunt's therapy could have been related to her double amputation or her marijuana use and that the step-sister's therapy may have also been related to issues in her past.

After argument, the court disagreed with defendant's contention that there had to be evidence of the nature of the therapy to establish that the crime was a direct cause of that therapy. The court stated: "Although these children have serious issues, had serious issues, their molestation by the defendant which was found to be true by 12 people, certainly would warrant continued counseling. Whether or not they were in counseling before is immaterial to this court."

The court, however, continued the hearing and requested additional information showing that the counseling "somehow involved the issues resulting from the molestations." The restitution officer suggested that the court could do an in camera review of the Board's records, and defendant agreed with that suggestion.

At the next hearing on June 10, 2011, the restitution officer transmitted confidential documents to the court for an in camera review. Defendant requested that the court release the documents to him with a protective order. The prosecutor stated that he, too, had not been allowed to see the sealed documents because of confidentiality issues, and he questioned whether the court could release documents without the custodian of records present. The trial court ordered further briefing as to the confidentiality issue and continued the restitution hearing.

The parties reconvened on September 23, 2011. At the beginning of the hearing, the trial court indicated it had done an in camera review of sealed documents sent by the

6

Board.  The documents included health insurance claim forms listing the dates of service and the amount charged per service.  As to these records, the court remarked:  "The documents I did receive were just lists of dates where counseling was provided, with no indication of the content or anything as to that matter."   The court questioned whether it could defer to the Board's findings that the counseling was related to defendant's crime.  The court allowed the prosecution to try to get additional records from the Board establishing the relationship between the counseling and the victimization in this case.  The court agreed to provide copies of the Board's certification to the parties but withheld the documents attached to the certification as privileged.  The court assured the parties that those documents "would have absolutely no value to anyone.  They list dates and times and that is it."

Prior to the final restitution hearing the Board transmitted additional sealed records, which included the "Treatment Plan (Form) (Confidential)" prepared by the treating therapist for each of the four victims.  The treatment plans included information about the therapist's understanding of the details of the crime for which she was providing treatment, her general evaluation of each victim's condition, and a proposed plan for treatment.  The brothers' therapist was also asked if she was aware of "any pre-existing condition or prior mental health treatment that may impact the current treatment."  She responded that she was aware of the brothers' "[p]revious neglect [and] alleged sexual abuse," and as to K.P., she noted that she "treated [K.P.] for [these incidents] prior to placement with adoptive family."  A declaration of the therapist was submitted with each treatment plan form.  In the declaration, the treating therapist was asked:  "[i]n your opinion, what percentage of your treatment is necessary as a direct result of the qualifying crime?"  In each instance, the treating therapist checked the box indicating "100%."

7

At the restitution hearing on April 27, 2012, the trial court stated that it had reviewed the additional documents. Defendant argued that he had rebutted the presumption that the amount paid by the Board for the victims' therapy was directly related to defendant's crime. Specifically, defendant reemphasized that the brothers and the aunt had preexisting conditions. As to the stepsister, defendant argued there was insufficient evidence to prove his conduct was a direct result of her therapy as she had no involvement at the trial and she never saw or heard of the brothers' molests. She was also abandoned as a child and adopted as an infant, which defendant suggested could be the cause of the therapy. Defendant additionally argued he was entitled to look at documents pertaining to the therapy sessions in order to determine if they were applicable to his crime.

The prosecutor argued that the step-sister was a victim as specified in section 1202.4 because she was a member of the household in which the crimes took place. (§ 1202.4, subd. (k)(3).) Furthermore, he argued that the court could impose the entire cost of counseling because even if there were other factors, defendant was aware of the brothers' history of abuse and chose to commit his crime regardless.

After argument, the court awarded restitution in the amount of $21,982 to be paid as reimbursement to the Board. The court based the award on the legal presumption under section 1202.4, subdivision (f)(4)(A) that the amount of assistance provided by the Board was a direct result of defendant's criminal conduct. As to defendant's argument that the presumption had been rebutted, the court compared the present case to "[t]he old eggshell victim theory where in this case, yes, Mr. Passineau knew of the victims' prior molestation, was fully aware of that when he accepted them into his home. Even if he had not been fully aware of that, he would still be responsible for their therapy because you take your victim as you find your victim." The court then described the sealed records, explaining that the forms had been submitted by the treating physicians, who

8

were required to identify the person receiving care, identify whether that person was a direct or a derivative victim, and provide other information regarding her understanding of the details of the crime. With respect to the two derivative victims, the court determined that the records made clear that the counseling was provided for defendant's present crime.

## DISCUSSION

Defendant contends that the trial court erred in setting restitution based on the legal presumption under section 1202.4, subdivision (f)(4)(A). We review a restitution order for abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) The abuse of discretion standard " 'asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].' [Citation.]" (*Ibid.*) "[A]n order resting upon a ' "demonstrable error of law" ' constitutes an abuse of the court's discretion. [Citation.]" (*People v. Jennings* (2005) 128 Cal.App.4th 42, 49.) Further, the trial court must have a factual and rational basis for the amount of restitution it orders. (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.)

### A. *The Presumption Under Section 1202.4, subdivision (f)(4)(A)*

Defendant first contends that the trial court abused its discretion by applying the legal presumption under section 1202.4, subdivision (f)(4), claiming that the Board submitted insufficient evidence that its payments were directly related to defendant's crime. We determine there was no such error.

Under section 1202.4, subdivision (f)(4)(A), if the Restitution Fund has provided assistance, there is a rebuttable presumption that amount of assistance was the "direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered." (§ 1202.4, subd. (f)(4)(A).) Subdivision (f)(4)(B) requires that the amount of assistance be established by certified copies of bills submitted to the Board

9

reflecting the amount paid and whether the payment was made for services such as mental health counseling. The bills must be submitted together with a statement made under penalty of perjury by the custodian of records. (§ 1202.4, subd. (f)(4)(B).)

The Board provided assistance to four victims in the total amount of $21,982 and submitted the documentation required under section 1202.4, subdivision (f)(4)(B) to create the presumption that the assistance provided was a "direct result of the defendant's criminal conduct." (§ 1202.4, subd. (f)(4)(A).) Pursuant to section 1202.4, subdivision (f)(4)(B), the certified records show that each of the four victims received mental health counseling, the dates of service, and the Board's payment of all or a portion of the amount billed for treatment. Additionally, the treating therapists certified that the treatment for the four victims was "100% related" to the crime committed by defendant. As required by the statute, the custodian of records declared under penalty of perjury that the records were an accurate compilation of the bills. Moreover, the trial court conducted an in camera review of the documents submitted by the Board. These documents included health insurance claim forms detailing the dates of service and total amount charged per service, which corroborated the accounting of the certified records. Thus, the certified records adequately support the application of the legal presumption under section 1202.4, subdivision (f)(4)(A).

**B.  *Defendant Failed to Rebut the Section 1202.4, subdivision (f)(4)(A) Presumption and the Board's Records Were Not Necessary to Dispute the Restitution Order***

Next, defendant contends that the court abused its discretion in failing to find he rebutted the presumption. He argues he presented evidence tending to rebut the presumption, and thus he was entitled to have the sealed Board records disclosed to him.

10

We conclude that the trial court did not abuse its discretion when it found the presumption was not rebutted and it refused to disclose the Board's records.

The presumption under section 1202.4, subdivision (f)(4)(A) is that the amount of assistance provided is a "direct result" of defendant's criminal conduct. "The statute's use of the word 'direct' signifies that the payment is presumed to have resulted *directly, or in fact,* from the defendant's criminal conduct. [Citation.] Stated differently, the defendant's conduct is presumed to be *a* cause in fact of the Board's payment. [Citation.]" (*People v. Lockwood* (2013) 214 Cal.App.4th 91, 101 (*Lockwood*).)

To rebut that presumption, a defendant has the burden to prove that his conduct is not *a* cause in fact of the Board's payment. (*Lockwood, supra,* 214 Cal.App.4th at p. 101.) "[T]o overcome the subdivision (f)(4)(A) presumption that the assistance given the victim was 'a direct result of the defendant's criminal conduct,' a defendant must prove that his criminal conduct played, *at most*, 'only an "infinitesimal" or "theoretical" part in bringing about' the injury. [Citations.]" (*Id.* at p. 103.)

Subdivision (f)(4)(C) of section 1202.4 provides a defendant a way to obtain the Board's records in order to challenge the presumption. Under that provision, the trial court may release the Board's records if (1) the defendant offers evidence to rebut the presumption and (2) the trial court determines after an in camera review of the records that the records are "necessary for the defendant to dispute the amount of the restitution order." (§ 1202.4, subd. (f)(4)(C).)

"[T]he defendant need not fully rebut the presumption to obtain the Board's records." (*Lockwood, supra,* 214 Cal.App.4th at p. 101.) Instead, the statute merely imposes a duty on a defendant of producing evidence. (*Id.* at p. 102.) "After the defendant does so, the trial court must examine the sealed records in camera to determine whether the information is necessary for the defendant to dispute the amount of restitution. If the court finds that the sealed records are necessary, the defendant is

11

entitled to use *both* his original evidence *and* the sealed material in his effort to rebut the subdivision (f)(4)(A) presumption." (*Ibid*.)

In *Lockwood*, the defendant appealed from a restitution order, claiming that the victim's hospitalization was not a direct result of his assault against her. (*Lockwood, supra,* 214 Cal.App.4th at p. 98.) The defendant offered evidence tending to rebut the section 1202.4, subdivision (f)(4)(A) presumption. Mainly, he suggested that the medical treatment underlying the Board's payment resulted from marital problems and injuries inflicted by the victim's husband. (*Ibid.*) The trial court did not conduct an in camera hearing of the Board's records.

On appeal, the Court of Appeal determined that the trial court erred in failing to conduct an in camera review of the Board's records as the defendant had offered evidence tending to rebut the presumption. (*Lockwood*, *supra*, 214 Cal.App.4th at p. 101.) Nonetheless, the court found the error harmless. (*Id.* at p. 103.) After conducting an independent review of the records, the court affirmed the restitution order, stating that "the records established that defendant's criminal conduct played more than an infinitesimal or theoretical part in the emotional or mental injuries for which the victim was treated . . . and defendant could not have successfully used the Board's records to rebut the presumption that the amount of assistance provided by the Restitution Fund was a direct result of his criminal conduct." (*Id.* at p. 104.)

Here, defendant offered evidence suggesting that all four victims had preexisting conditions that may have been the cause of the therapy. Unlike in *Lockwood*, the trial court in this case properly conducted an in camera review of the records. After its review, the trial court determined that the documents did not provide information that would be "necessary for the defendant to dispute the amount of the restitution order." (§ 1202.4, subd. (f)(4)(C).) The court went a step further by describing the general

12

contents of the sealed records (i.e., the treatment plan forms). The court concluded that the presumption was not rebutted by evidence that the victims had preexisting conditions.

At defendant's request, we have conducted a thorough review of the sealed clerk's transcript. Based on our review, we agree with the trial court's assessment that there was nothing in the sealed records that was "necessary for the defendant to dispute the amount of the restitution order" (§1202.4, subd. (f)(4)(C)) and that the presumption was not rebutted. The certified records accurately compiled the bills for the mental health services that were provided, and they included the dates of those services, which closely follow the victimization. The sealed records include "Treatment Plan" forms that were completed by each of the victims' treating therapist. In each treatment plan, the therapist was asked to describe the crime for which she had been providing treatment. In response, the therapists described defendant's crime against the brothers.

The records further show that the brothers' therapist was aware of their preexisting conditions. Their therapist was asked if she was "aware of this client having any pre-existing condition or prior mental health treatment that may impact the current treatment." In both instances, she responded she was aware of "[p]revious neglect [and] alleged sexual abuse . . . ." On K.P.'s treatment plan, she added that she "treated [K.P.] for [these incidents] prior to placement with adoptive family." Despite this mention of the brothers' prior molests, there is no indication in the sealed records that any of the victims were treated for their preexisting conditions. In fact, in all four treatment plans, the therapist checked a box indicating that the treatment was "100%" "necessary as a direct result of the qualifying crime." These statements corroborate the statement in the certified records, which declares that the treating therapist verified that the treatment was "necessary as a direct result of the crime and 100% related to the crime . . . ."

Upon reviewing the Board's records, we conclude the trial court did not abuse its discretion because defendant did not meet his burden to rebut the section 1202.4,

13

subdivision (f)(4)(A) presumption.  Similar to *Lockwood,* defendant failed to prove his conduct was not "a cause in fact" (i.e., his conduct played "more than an infinitesimal or theoretical part" of the victims' treatment).  (*Lockwood, supra,* 214 Cal.App.4th at pp. 101, 104.)  Thus, defendant did not rebut the presumption.  Accordingly, the trial court appropriately based the restitution order on the legal presumption under section 1202.4, subdivision (f)(4)(A).

### C.  *The Trial Court Did Not Deprive Defendant of Due Process, Did Not Violate the Separation of Powers Doctrine, and Did Not Abuse its Discretion*

Defendant argues that the trial court denied him due process by refusing to disclose the sealed documents and thereby denied him a meaningful opportunity to dispute the restitution amount.  Defendant also contends that the trial court violated the separation of powers doctrine by accepting the Board's request for restitution without question.  Lastly, defendant claims that the trial court abused its discretion by "arbitrarily assessing the element of causation" and not weighing the victims' preexisting conditions.

As explained above, the trial court did not abuse its discretion in basing the restitution order on the statutory legal presumption.  For the same reasons, the trial court did not violate due process nor the separation of powers doctrine.  Nor did the trial court err in assessing causation.  In fact, it appears the trial court carefully considered the evidence supporting the restitution amount.  The court asked for further briefing from the parties, requested additional records from the Board twice, and reviewed the sealed records in camera before ultimately deciding that the legal presumption was not rebutted.  Accordingly we conclude there was no abuse of discretion and determine that defendant was properly ordered to pay restitution in the amount of $21,982.

### DISPOSITION

The judgment is affirmed.

14

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MÁRQUEZ, J.